256 N.J. Super. 268 (1992)
606 A.2d 1119
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JERRY LEE BATTLE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1992.
Decided May 12, 1992.
*271 Before Judges SHEBELL, SKILLMAN and D'ANNUNZIO.
Robert J. Kipnees argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney; Deborah A. Silodor and Robert J. Kipnees, of counsel and on the brief).
*272 Catherine A. Foddai, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Catherine A. Foddai, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was indicted for possession of marijuana with the intent to distribute, in violation of N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11); possession of marijuana, in violation of N.J.S.A. 2C:35-10(a)(3); aggravated assault upon a police officer, in violation of N.J.S.A. 2C:12-1(b)(5)(a), and second degree escape, in violation of N.J.S.A. 2C:29-5. At the beginning of the trial, the court heard defendant's motion to suppress evidence of the alleged marijuana found in his automobile. The court granted defendant's motion, but suppressed the evidence only with respect to the charges of possession of marijuana and possession of marijuana with the intent to distribute, thus allowing the State to present this evidence insofar as it was relevant to the assault and escape charges. The court then granted the State's motion to dismiss the marijuana charges. The trial of the remaining charges proceeded and defendant was found guilty of aggravated assault and resisting arrest, which was submitted to the jury as a lesser included offense of escape. The court sentenced defendant to a five year term of imprisonment for aggravated assault upon a police officer and a concurrent eighteen month term for resisting arrest. Defendant appeals.

I
Defendant's first argument is that the trial court violated his Fourth Amendment rights by allowing the State to introduce evidence of the alleged marijuana found pursuant to an unlawful search of his car.
The State presented evidence at the suppression hearing that a police officer observed defendant driving an automobile on *273 Route 17 around 1:30 a.m. on July 4, 1988. Defendant's car had no license plates, so the officer signaled him to stop. Defendant got out of his car and walked toward the police car with his motor vehicle license in his hand. At about the same time, the officer noticed that defendant's car had a temporary registration tag affixed to the rear window. Nevertheless, the officer directed defendant to return to his car and followed him. When the officer looked into defendant's car, he saw a type of rolling paper commonly used to wrap marijuana cigarettes and a plastic bag. The officer ordered defendant and the other two occupants to get out of the car and patted them down. After this search failed to reveal anything, the officer removed the plastic bag from the interior of the vehicle and discovered a greenish brown vegetation, which he believed to be marijuana.
According to the officer, he then told defendant and the other occupants that they were under arrest. However, codefendant Harris bolted from the group and began running down the highway. The officer directed Harris to stop or he would shoot. While the officer's attention was directed towards the fleeing Harris, defendant got back into his car and began to drive away. Consequently, the officer jumped into the passenger side of the car and tried to turn off the ignition. But defendant prevented the officer from stopping the car by elbowing his chest and hitting his arms. In response, the officer pulled out his gun and hit defendant over the head with it. At this point, with the car travelling approximately 40 miles per hour, defendant pushed the officer out of the car onto the middle lane of the highway. As a result, the officer suffered a broken foot and other injuries. Defendant continued his flight from the scene but surrendered to the police three days later. Harris also was apprehended but the third occupant escaped. The police never recovered the rolling paper or greenish brown vegetation which the officer observed in defendant's car.
The trial court concluded on the basis of this evidence that the alleged marijuana in defendant's car was discovered as a result of an unlawful search. Specifically, the court concluded *274 that although the officer had the right to stop defendant's car because it had no license plates, his reasonable suspicion was dispelled when he observed the temporary license plate and at that point any further detention of defendant and his passengers became impermissible. Accordingly, the court suppressed the officer's statements regarding what he observed after the illegal detention and search. However, the court limited the effect of its suppression order to the counts of the indictment charging defendant with possession of marijuana and possession with the intent to distribute, thus permitting the officer to testify in connection with the escape and assault charges that he found what he believed to be marijuana in defendant's car. The court's rationale for this limitation upon the suppression order was that even if the detention of defendant and search of his car was illegal, defendant had no right to escape or assault the officer, and that the State could present the officer's account of what he saw and did before defendant's alleged escape and assault in order to prove these charges. We agree and therefore affirm the court's order allowing the State to present the suppressed evidence for this limited purpose.
In State v. Casimono, 250 N.J. Super. 173, 182-85, 593 A.2d 827 (App.Div. 1991), certif. denied, 127 N.J. 558, 606 A.2d 370 (1992), we held that an unconstitutional detention or search ordinarily will not bar a conviction for an assault, escape or other offense committed in response to the unlawful police action. Our essential rationale was that extending the fruits of the poisonous tree doctrine to immunize a defendant from prosecution for new crimes committed after police misconduct would give a criminal suspect "an intolerable carte blanche to commit further criminal acts," which would be "too far reaching and too high a price for society to pay in order to deter police misconduct." Id. at 184, 593 A.2d 827 (quoting United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir.1982), cert. denied, 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983)).
*275 Defendant concedes that under our decision in Casimono he was subject to prosecution for aggravated assault and escape, even though these alleged offenses arose out of an unconstitutional detention and search. Nevertheless, he argues that the trial court erred in allowing the State to introduce evidence of the events leading up to the commission of these offenses, in particular evidence of the discovery of marijuana in his car, because that evidence was obtained in violation of the Fourth Amendment.
The exclusionary rule generally prohibits the use in criminal proceedings of evidence obtained in violation of federal or state constitutional rights. James v. Illinois, 493 U.S. 307, 311, 110 S.Ct. 648, 651, 107 L.Ed.2d 676, 682-83 (1990); State v. Johnson, 118 N.J. 639, 651, 573 A.2d 909 (1990). However, "the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561, 571 (1974). Consequently, if application of the exclusionary rule in a particular situation "does not result in appreciable deterrence, ... its use ... is unwarranted." United States v. Janis, 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046, 1060 (1976). Thus, exceptions to the exclusionary rule have been recognized "where the introduction of reliable and probative evidence would significantly further the truth-seeking function of a criminal trial and the likelihood that admissibility of such evidence would encourage police misconduct is but a `speculative possibility.'" James v. Illinois, supra, 493 U.S. at 311, 110 S.Ct. at 651, 107 L.Ed.2d at 683. For example, illegally seized evidence may be used in grand jury proceedings, United States v. Calandra, supra, 414 U.S. at 350-52, 94 S.Ct. at 621-22, 38 L.Ed.2d at 573; or to impeach a defendant, United States v. Havens, 446 U.S. 620, 627, 100 S.Ct. 1912, 1916-17, 64 L.Ed.2d 559, 566 (1980); see also *276 United States v. Janis, supra; Delguidice v. New Jersey Racing Comm'n, 100 N.J. 79, 494 A.2d 1007 (1985).
We are satisfied that the presentation of evidence of the events leading up to the alleged aggravated assault and escape committed by defendant, including the police's discovery of what appeared to be marijuana, was essential to the "truth seeking function" of this trial. James v. Illinois, supra, 493 U.S. at 311, 110 S.Ct. at 651, 107 L.Ed.2d at 683. One of the offenses defendant was charged with committing was escape, which required the State to establish that defendant "without lawful authority [had removed] himself from official detention," N.J.S.A. 2C:29-5a. Consequently, the State had to present evidence of the stop of defendant's car and his subsequent arrest to establish one element of this offense. Although the State could have tried to establish defendant's arrest without presenting any evidence of the alleged offense for which he was arrested, this kind of sanitized presentation of State's evidence would have left gaps in the jury's understanding of the chain of events leading to the alleged arrest, thus increasing the risk that the jury would disbelieve the officer's assertion that he had arrested defendant. Moreover, the omission of this evidence could have led the jury to speculate that the police officer had no basis for arresting defendant or that defendant had been arrested for a minor motor vehicle infraction such as a failure to produce an insurance identification card. Such speculation could have led the jury to doubt the veracity of the officer's account of defendant's actions after he was arrested, because the jury might have considered it implausible that an innocent arrestee or one charged with a petty offense would initiate a violent confrontation with the police. Therefore, the State's presentation of a full account of the events leading up to the commission of the alleged escape and aggravated assault, including the police officer's discovery of what appeared to be marijuana, lent credibility to the officer's account of both his own and defendant's actions.
*277 Furthermore, there is no realistic likelihood that the admission of this evidence in defendant's prosecution for escape and aggravated assault "would encourage police misconduct." James v. Illinois, supra, 493 U.S. at 311, 110 S.Ct. at 651, 107 L.Ed.2d at 683. The trial court suppressed evidence of the contents of the plastic bag found in defendant's car in connection with the drug charges, which resulted in their dismissal. The suppression of this evidence in connection with the drug charges, while allowing its use in the prosecution of defendant for new crimes allegedly committed after the police misconduct, provided an adequate deterrent to police misconduct, because the officer's evident objective in conducting an unlawful search was to discover drugs, not to precipitate defendant's violent response to his arrest. See United States v. Janis, supra, 428 U.S. at 448, 96 S.Ct. at 3029, 49 L.Ed.2d at 1057.
Our conclusion that evidence that defendant had marijuana in his car was admissible in his prosecution for aggravated assault and escape, even though it was obtained in violation of the Fourth Amendment, is supported by a line of decisions in other jurisdictions. See, e.g., United States v. Finucan, 708 F.2d 838, 845-846 (1st Cir.1983); United States v. Raftery, 534 F.2d 854 (9th Cir.1976), cert. denied, 429 U.S. 862, 97 S.Ct. 167, 50 L.Ed.2d 141 (1976); United States v. Turk, 526 F.2d 654, 667 (5th Cir.1976), cert. denied, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976); United States v. Lynch, 716 F. Supp. 96 (S.D.N.Y. 1989); State v. Cooper, 9 Conn. App. 15, 514 A.2d 758, 764-65 (1986); Ellison v. State, 410 A.2d 519, 526-27 (Del. Super. Ct. 1979), aff'd o.b., 437 A.2d 1127 (Del. 1981), cert. denied, 455 U.S. 1026, 102 S.Ct. 1730, 72 L.Ed.2d 147 (1982); Taylor v. State, 92 Nev. 158, 547 P.2d 674 (1976); People v. Drain, 73 N.Y.2d 107, 538 N.Y.S.2d 500, 535 N.E.2d 630 (1989); see generally, Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 11.6(c) (2d ed. 1987). For example, in Ellison the police stopped defendant while he was operating a motor vehicle under circumstances which the court subsequently determined did not justify a stop. Defendant fled from *278 the police, which resulted in a charge of resisting arrest. The court held for reasons similar to those we adopted in Casimono that defendant could be prosecuted for resisting arrest even though the arrest resulted from an illegal stop. In addition, the court held that the arresting officers could testify regarding all the circumstances of the unlawful arrest. The court stated that exclusion of this evidence would effectively immunize acts of resistance to unlawful arrests from prosecution and that "nothing in the Constitution ... requires the State to subject its law enforcement officers to such deadly potentialities." 410 A.2d at 526.
We believe that the same reasoning is applicable to this case. To permit the police officer whom defendant allegedly assaulted to testify about defendant's flight and resistance to arrest without allowing him to describe the surrounding circumstances which lend credibility to the officer's account of what occurred, including the discovery in defendant's car of what appeared to be marijuana, would eviscerate our holding in Casimono. Therefore, we hold that evidence obtained through an unconstitutional search is admissible at a trial for an alleged assault, escape or other offense committed in response to the unlawful police action.

II
Defendant's second argument is that his conviction for resisting arrest must be reversed because he was not indicted for this offense and it was improperly submitted to the jury as a lesser included offense of escape.
To place this argument in proper perspective, it is necessary to set forth the circumstances under which the offense of resisting arrest was submitted to the jury. Defendant testified in his own behalf that when he was stopped by the police he was driving codefendant Harris and another individual identified as "Nafees" to New York City to pick up Nafees' sister. They parked the car briefly in New York but Nafees said he *279 could not find his sister and they then drove back to New Jersey. After the police officer stopped defendant's car, he ordered defendant and his passengers to get out and conducted a patdown search of defendant. The officer then discovered a bag under the front passenger seat which defendant had not seen before. When the officer asked what the bag contained and placed it on the hood of the car, Harris fled the scene. The officer shouted at Harris, "Hold it or I'll shoot." According to defendant, he panicked at this point and jumped back into his car. As he started to drive away, the police officer also jumped into the car and tried to grab him. When defendant resisted, the officer got out his gun and hit defendant over the head with it. According to defendant, he did not hit, kick or push the officer, but as he was attempting to defend himself, the officer fell out of the car.
Thus, defendant's version of the incident corroborated the officer's version in many respects. However, defendant testified that he had not been arrested when he fled the scene and that he did not strike or have any intention to injure the officer.
During defendant's direct examination, the court noted that, after discussion with counsel, the offense of resisting arrest would be charged as a lesser offense of escape. Defense counsel indicated that he had no objection to this charge. After the court's charge to the jury, defense counsel again indicated that he had no objection. During jury deliberations, the jury asked to have the crimes of escape and resisting arrest redefined. At that point, the assistant prosecutor asserted that he wished to place on the record his objection "once more" to the inclusion of the resisting arrest charge because it was not a lesser included offense of escape. But again, defense counsel voiced no objection to this charge.
The jury acquitted defendant of the second degree offense of escape and convicted him of the fourth degree offense of resisting arrest, apparently accepting his theory that he had not yet been placed under arrest at the time he fled but was merely *280 in the process of being arrested. Notwithstanding his acquiescence at trial to the submission of resisting arrest as a lesser included offense of escape, defendant now argues that this charge was reversible error.
Since escape requires proof that a defendant was under arrest, N.J.S.A. 2C:29-5a, and resisting arrest requires proof that a defendant prevented a law enforcement officer from effectuating an arrest, N.J.S.A. 2C:29-2a, each offense requires proof of an additional element not required by the other. However, it is now recognized that "in certain circumstances, subject to the requirements of fair notice, an offense, if supported by the evidence, should be charged to the jury even though it does not meet the Code's definition of lesser-included offense." State v. Purnell, 126 N.J. 518, 531, 601 A.2d 175 (1992) (quoting State v. Mancine, 124 N.J. 232, 265, 590 A.2d 1107 (Stein, J., concurring)); accord State v. Ciuffreda, 127 N.J. 73, 602 A.2d 267 (1992); State v. Sloane, 111 N.J. 293, 299-304, 544 A.2d 826 (1988); see also State v. LeFurge, 101 N.J. 404, 502 A.2d 35 (1986); State v. Talley, 94 N.J. 385, 466 A.2d 78 (1983). Thus, in Purnell the Court held that felony murder, N.J.S.A. 2C:11-3a(3), should be submitted to the jury as a lesser offense of purposeful or knowing murder, N.J.S.A. 2C:11-3a(1) and (2), even though it requires proof of an additional element, the commission of one of a specified list of felonies. Indeed, the court held that even though defendant had not requested a charge on the lesser offense of felony murder, the failure to submit it to the jury was reversible error. Likewise, in Sloane the Court held that upon a defendant's request, third degree aggravated assault, N.J.S.A. 2C:12-1b(2), should be submitted to the jury as a lesser offense of second degree aggravated assault, N.J.S.A. 2C:12-1b(1), even though it requires proof of an element, use of a deadly weapon, which is not required to establish the second degree offense. And in Ciuffreda the Court held that it was proper to submit passion/provocation manslaughter to the jury as a lesser offense of aggravated manslaughter, even though the offense requires the State to *281 establish the additional element of purposeful or knowing conduct, because defendant consented to the passion/provocation manslaughter charge and was not prejudiced by it.
In the absence of a valid waiver, the submission to the jury of an offense which is not a lesser included offense violates a defendant's state constitutional right not to be tried except upon "the presentment or indictment of a grand jury." N.J. Const. art. I, ¶ 8. State v. Ciuffreda, supra; see also State v. Wagner, 180 N.J. Super. 564, 435 A.2d 1190 (App.Div. 1981). On the other hand, the failure to submit a lesser offense to the jury which does not satisfy the Code's definition of a lesser-included offense may under some circumstances violate the due process guarantees of the federal and state constitutions. State v. Purnell, supra, 126 N.J. at 530-34, 601 A.2d 175; cf. Schad v. Arizona, 501 U.S. ___, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).
In Ciuffreda the Court stated that a defendant ordinarily must make a written waiver of his right to indictment before the court may submit a charge to the jury which is not a lesser included offense within the intent of the Code. State v. Ciuffreda, supra, 127 N.J. at 79, 602 A.2d 267. However, the Court indicated that a valid waiver of the right to indictment may be found under some circumstances notwithstanding the absence of a written waiver executed by the defendant in conformity with R. 3:7-2. Id. at 81-82, 602 A.2d 267. Thus, in Ciuffreda the Court held that "[b]ecause defendant had notice before trial that he might be charged with passion/provocation manslaughter, and because he consented to that charge after all the evidence had been presented, we conclude that counsel's oral consent was sufficient to constitute a waiver of defendant's right to indictment." Id. at 82, 602 A.2d 267.
Although defendant was not given any notice before trial that he would be charged with resisting arrest, we find the circumstances in this case equally if not more compelling than in Ciuffreda for finding a valid waiver of defendant's right to *282 indictment. The strategic benefit to defendant of the submission of this charge to the jury is self-evident. Defendant was indicted for second degree escape, for which he was subject to a five to ten year term of imprisonment, N.J.S.A. 2C:29-5d, while the form of resisting arrest submitted to the jury is a fourth degree offense, for which he could be sentenced to a maximum term of eighteen months, N.J.S.A. 2C:29-2a. Furthermore, defendant, testifying on his own behalf, admitted that he had attempted to escape police detention, disagreeing with the officer only as to whether this conduct occurred before or after he was placed under arrest. While the jury could have acquitted defendant if it believed his version of the incident and escape was the only offense charged, defense counsel could reasonably have thought that the jury would be reluctant to acquit defendant outright and that he would have a better chance of being acquitted of escape if the jury were given the opportunity to convict him of a lesser offense.
In addition, defendant clearly had timely and adequate notice of the court's intent to submit resisting arrest to the jury as a lesser offense of escape. Indeed, defense counsel participated in this decision in an off-the-record charge conference and then expressed his consent to the charge on the record. Furthermore, the charge conference occurred in the middle of defendant's testimony, during which he in effect denied his guilt of escape and admitted his guilt of resisting arrest. Thus, defendant not only had timely notice that this lesser offense would be submitted to the jury but it may be reasonably inferred that it was submitted upon the request of his attorney for the strategic reasons previously discussed.
A defendant cannot request the trial court to take a certain course of action, take his chance on the outcome of the trial and "then condemn the very procedure he sought and urged, claiming it to be error and prejudicial." State v. Ramseur, 106 N.J. 123, 282, 524 A.2d 188 (1987) (quoting State v. Pontery, 19 N.J. 457, 471, 117 A.2d 473 (1955)). By his acquittal of the charge of escape, defendant apparently obtained a substantial benefit *283 from the submission to the jury of the charge of resisting arrest. Consequently, in our view it would pervert the constitutional protections afforded an accused to permit defendant now to secure a reversal of his conviction for resisting arrest after he has reaped the benefit of its submission to the jury at trial. See State v. Ciuffreda, supra; see also State v. Buonadonna, 122 N.J. 22, 35-40, 583 A.2d 747 (1991) (defense counsel may waive his client's right to a severance); State v. Ciniglio, 57 N.J. Super. 399, 403-07, 154 A.2d 845 (App.Div. 1959), certif. denied, 31 N.J. 295, 157 A.2d 364 (1960) (defense counsel can waive defendant's right to a jury of twelve despite court rule requiring such stipulation to be in writing by the defendant).

III
Defendant also argues that the trial court should have merged his conviction for aggravated assault upon a police officer into his conviction for resisting arrest. However, such a merger would be improper because resisting arrest is a fourth degree offense and aggravated assault upon a police officer is a third degree offense and, absent a clear expression of contrary legislative intent, a crime of a greater degree cannot be merged into one of lesser degree. State v. Dillihay, 127 N.J. 42, 54-55, 601 A.2d 1149 (1992); State v. Hammond, 231 N.J. Super. 535, 545, 555 A.2d 1169 (App.Div.), certif. denied, 117 N.J. 636, 569 A.2d 1336 (1989).
Although defendant does not expressly seek to merge his conviction for resisting arrest into his conviction for aggravated assault, that form of merger also would be improper. According to N.J.S.A. 2C:1-8a, a defendant may not be convicted of more than one offense if one is included in the other. An offense is considered included in another if it is established by proof of the same or less than all the facts required to establish the commission of the other offense. N.J.S.A. 2C:1-8d(1). N.J.S.A. 2C:12-1b(5)(a) provides that a defendant is guilty of aggravated assault if he commits a simple assault (attempts to *284 cause or purposely, knowingly, or recklessly causes bodily injury) upon a law enforcement officer acting in the performance of his duties. N.J.S.A. 2C:29-2a provides that a person is guilty of resisting arrest if he purposely prevents a law enforcement officer from effecting a lawful arrest. Thus, aggravated assault requires proof of an attempt to cause or the actual causing of bodily injury, an element not required by the offense of resisting arrest. And the offense of resisting arrest requires the act of preventing a law enforcement officer from effectuating a lawful arrest, an element not required by aggravated assault. It is also clear that the two statutes serve to protect different interests. See State v. Miller, 108 N.J. 112, 116-21, 527 A.2d 1362 (1987). While the offense of aggravated assault under N.J.S.A. 2C:12-1b(5)(a) is concerned with physical protection of police officers, the offense of resisting arrest is directed at preventing persons from resisting police apprehension. Therefore, there is no basis for a merger of defendant's convictions.

IV
Defendant argues that the police officer's testimony regarding the contents of the plastic bag was "other crimes" evidence which was inadmissible under Evidence Rule 55. However, Rule 55 applies only to "conduct that occurred on other occasions" and not to conduct which is "part of the total criminal event on the same occasion." State v. Ortiz, 253 N.J. Super. 239, 249, 601 A.2d 735 (App.Div. 1992) (quoting State v. Sease, 138 N.J. Super. 80, 85, 350 A.2d 262 (App.Div. 1975)). Here, the police officer's testimony that he observed what he believed to be marijuana in a bag discovered in defendant's car and then placed defendant under arrest was part of "the total criminal event" for which defendant was charged and not evidence of a crime committed on another occasion. Therefore, Rule 55 has no applicability. Furthermore, even if the police officer's observations would have been insufficient to establish defendant's guilt of the drug charges, they were directly relevant *285 to the escape and aggravated assault charges and therefore not subject to exclusion under Evidence Rule 4.

V
Defendant also argues that the prosecutor made improper comments at trial which deprived him of a fair trial. This argument is clearly without merit and does not require discussion. R. 2:11-3(e)(2).

VI
Finally, defendant argues that he was entitled to a presumption of a noncustodial sentence, which the State failed to overcome, and that his sentence was excessive.
The presumption in favor of a noncustodial sentence applies only to "a person convicted of an offense other than a crime of the first or second degree, who has not previously been convicted of an offense." N.J.S.A. 2C:44-1e. An offense is defined by the Code as a crime, a disorderly persons offense or a petty disorderly persons offense. N.J.S.A. 2C:1-14(k). Hence, a disorderly persons offense qualifies as a prior conviction. State v. Kates, 185 N.J. Super. 226, 227-28, 447 A.2d 1367 (Law Div. 1982). According to the Presentence Report, defendant was convicted in 1981 in the Newark municipal court of possession of stolen property and possession of marijuana. Therefore, he was not a first-time offender and was not entitled to the statutory presumption of non-imprisonment.
Furthermore, even if defendant had been entitled to a presumption of a noncustodial sentence, the presumption was overcome because defendant acted in an especially depraved manner when he pushed a police officer from his speeding car onto a major highway. Consequently, the nature and circumstances of the offense warranted the conclusion that defendant's *286 imprisonment was "necessary for the protection of the public." N.J.S.A. 2C:44-1e.
Affirmed.