**Brunce SMITH, Petitioner,**

v.

**Walter KELLY, Superintendent, Attica Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondent.**

No. 86 Civ. 7798 (JMW).

United States District Court,
S.D. New York.

July 9, 1987.

Brunce Smith, pro se.

Michael J. Eng, Office of the Dist. Atty., Bronx County, New York City, for respondent.

## MEMORANDUM AND ORDER

WALKER, District Judge.

### INTRODUCTION

Petitioner Brunce Smith ("Smith") brings the instant application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner contends that his sixth amendment right to confront adverse witnesses was violated during his state court trial, which concluded with petitioner's conviction and sentencing on assault and weapons charges.

For the reasons set forth below, petitioner's application for a writ of habeas corpus is denied.

### STATEMENT OF FACTS

The instant petition arises out of a May 28, 1979 shooting at a New York City playground, in which two men were injured. At the conclusion of his March 1981 trial, petitioner was found guilty on one count of Second Degree Criminal Possession of a Weapon, one count of First Degree Reckless Endangerment, and two counts of Second Degree Assault. On June 26, 1981, petitioner was sentenced to concurrent terms of 7 years, 6 months to 15 years, and 3½ years to 7 years.

At trial, the state presented evidence, including the testimony of a number of eyewitness observers, to show that petitioner was responsible for the May 28 shooting. The prosecution argued that during early 1979, petitioner, at that time a student at Manhattan Community College, lost $2 in a card game to Robert Glenn, another student. In the next few weeks, petitioner failed to pay his $2 debt.

On May 28, 1979, petitioner visited a playground where Glenn was playing basketball. After petitioner and Glenn became involved in an argument concerning the $2 debt, petitioner hit Glenn with the butt of a gun. Glenn started to run, and petitioner scattered shots around the playground. Both Glenn and Thaddeus Kempson, who had been watching the basketball game, were wounded by these shots. Petitioner fled the scene of the crime, and was arrested at a building on 386 East 153 Street.

On March 11, 1981, the Bronx County Supreme Court commenced a hearing, as required under *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), to determine the admissibility of identifications that the prosecution intended to offer into evidence. The court also scheduled this hearing to assess whether petitioner made any relevant pre-trial statements voluntarily, as required under *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

Petitioner appeared during the first three days of these hearings. However, on the morning of March 16, 1981, petitioner did not attend the scheduled pre-trial hearing, despite the court's prior statement to petitioner that proceedings would continue on this date. *Hearing Transcript,* at 120. Petitioner's case was adjourned until the afternoon of March 16, when petitioner again did not appear before the court. The court granted a second adjournment until March 17 at 10 am. When the court reconvened on March 17 and petitioner remained absent, the court continued the pre-trial hearings in petitioner's absence. Before resuming proceedings, the court asked petitioner's counsel why his client was absent. Petitioner's counsel responded: "I do not know where my client is...." *Hearing Transcript,* at 122.

Detective Frank Morse was assigned by the prosecutor to locate petitioner. On March 16, Morse first contacted Rikers Island Prisoner Information and the Bureau of Criminal Identification. Morse was informed that petitioner had not been arrested in the last 24 hours, and was not in prison custody. Morse then contacted about ten hospitals, without finding petitioner.

After speaking with officers at the 42nd Precinct police station, Morse learned that

an abandoned building was located at the address petitioner had listed as his residence after his arrest, 1075 Boston Road. Morse visited petitioner's prior address, 3700 East 153 Street, Apartment 6D, where petitioner's mother lived in early 1981. Morse knocked on the door and received no response. Finally, Morse contacted Manhattan Community College, and was told that petitioner no longer attended this school. Morse reported his attempts to locate petitioner to the trial court. *Hearing Transcript*, at 139–50.

After hearing Morse's testimony on his attempts to locate petitioner, the court denied the defense counsel's request for a further adjournment, stating:

> The Court ... finds that the defendant wilfully and voluntarily absented himself from trial and therefore waived his right to be present at every stage of the trial and to confront witnesses. It doesn't appear in anyway [and] no proof has been submitted or any reason shown to believe that any incapacity or catastrophe has in fact come to the defendant.

> The Court therefore finds that the defendant has wilfully, voluntarily and intelligently absented himself from the proceedings and therefore the Court rules that the proceedings shall go forward in his absence.

*Transcript*, at 187–88. At this time, the Court informed counsel that petitioner's trial would begin immediately following the pre-trial hearings.

On March 17–18, Morse contacted the same offices and addresses, but again had no success in his efforts to locate petitioner. Petitioner did not respond to a bench warrant, issued by the trial judge on March 18, 1981 and directing petitioner to appear in court.

Petitioner's state court trial commenced on March 25, 1981. On March 31, 1981, the jury returned a verdict of guilty on all counts charged in the indictment. Petitioner did not appear in the courtroom at any point during his criminal trial.

Prior to petitioner's sentencing hearing, which began on May 21, 1981, Morse continued his efforts to locate petitioner.

Morse contacted several state criminal justice agencies and the Federal Bureau of Investigation, but received no address for petitioner from these agencies. Morse also contacted Consolidated Edison, New York Telephone, several hospitals, and two morgues without finding any record of petitioner's whereabouts. Morse visited the East 153 Street address where petitioner's mother lived, but he received no response when he knocked on the door. *Sentencing Transcript*, at 16–25. After hearing Morse's testimony, the state trial judge ruled that petitioner had "absented himself voluntarily for the purpose of sentencing." *Id.* at 46. The Court concluded the hearing and delivered petitioner's sentence in his absence. Subsequently, state authorities apprehended petitioner and escorted him to the Attica Correctional Facility, where he is currently serving the sentence imposed by the state court.

Petitioner appealed his conviction to the First Department of the Appellate Division. The appellate panel held that the *in absentia* proceedings violated petitioner's sixth amendment rights, and reversed his conviction, with two judges of the five-judge panel joining in a lengthy dissent. *People v. Smith*, 111 A.D.2d 608, 489 N.Y.S.2d 908 (1st Dep't 1985).

The state appealed this decision to the New York Court of Appeals. In a one-page memorandum opinion, a unanimous court reversed the Appellate Division decision and held that the lower court's decision to hold *in absentia* proceedings was not improper. *People v. Smith*, 66 N.Y.2d 775, 497 N.E.2d 363, 488 N.E.2d 109 (1985). The Court of Appeals remanded the case for consideration of petitioner's other appellate arguments to the Appellate Division, which affirmed petitioner's conviction without opinion. *People v. Smith*, 117 A.D.2d 563, 499 N.Y.S.2d 615 (1st Dep't 1986), *appeal denied*, 67 N.Y.2d 1057, 504 N.Y.S.2d 1033, 495 N.E.2d 366 (1986).

Petitioner subsequently brought the instant habeas petition, challenging the trial court's decision to hold *in absentia* proceedings.

## DISCUSSION

The sixth amendment establishes a criminal defendant's right to attend his trial in order "to be confronted with the witnesses against him...." U.S. Const. amend. VI. However, "[i]t has long been settled that a defendant charged with a crime may knowingly and voluntarily waive his constitutional right to be present at his trial." *United States v. Sanchez,* 790 F.2d 245, 248 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986); *accord Diaz v. United States,* 223 U.S. 442, 456–58, 32 S.Ct. 250, 254–55, 56 L.Ed. 500 (1912). In evaluating a court's decision to hold *in absentia* proceedings, the reviewing court must undertake a two-part inquiry: 1. Did the defendant knowingly and voluntarily waive his right to be present at his trial?; 2. Given a knowing and voluntary waiver of this right by the defendant, was the trial court's decision to hold a trial or other proceedings *in absentia* appropriate? *United States v. Sanchez, supra,* 790 F.2d at 248–50; *United States v. Benavides,* 596 F.2d 137, 139 (5th Cir.1979).

### 1. *Knowing and Voluntary Waiver.*

■ In the instant case, petitioner's continued failure to attend either his pre-trial proceedings or his subsequent trial constituted a knowing and voluntary waiver of petitioner's right to attend these proceedings. In holding that a defendant's failure to attend proceedings could constitute such a waiver, the Second Circuit Court of Appeals has written:

> A defendant who deliberately fails to appear in court does so voluntarily, and thus the important question is whether his absence can be considered a 'knowing' waiver. We hold that it can. The deliberate absence of a defendant who knows that he stands accused in a criminal case and that the trial will begin on a day certain indicates nothing less than an intention to obstruct the orderly processes of justice. No defendant has a unilateral right to set the time or circumstances under which he will be tried.

*United States v. Tortora,* 464 F.2d 1202, 1208 (2d Cir.1972), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). *Accord United States v. Barton,* 647 F.2d 224, 238 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981).

In the instant case, the trial court informed petitioner of the schedule for his pre-trial hearing, and informed petitioner's counsel of his trial date. However, the court could not directly inform petitioner of when his trial would begin, since petitioner was no longer attending court proceedings when the court scheduled the trial.

The trial judge did not commit error in failing to make a direct statement to petitioner on trial scheduling. As the Second Circuit recently observed in rejecting a sixth amendment argument, a defendant "may be deemed to have been advised of a trial date once it is communicated by the judge to his lawyer...." *United States v. Sanchez, supra,* 790 F.2d at 249. *See also Finney v. Rothgerber,* 751 F.2d 858, 862 (6th Cir.), *cert. denied,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 310 (1985); *Brewer v. Raines,* 670 F.2d 117, 119 (9th Cir.1982); *Wilcox v. United States,* 425 F.Supp. 895, 898 (D.Conn.1975). A rule requiring direct communication to a defendant of all trial dates would allow a defendant to delay proceedings indefinitely by failing to appear in court. However, "there can be no doubt that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." *Illinois v. Allen,* 397 U.S. 337, 349, 90 S.Ct. 1057, 1063, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring); *See also Brewer v. Raines,* 670 F.2d 117, 119 (9th Cir.1982) ("A defendant cannot be allowed to keep himself deliberately ignorant and then complain about his lack of knowledge.").

In short, this Court holds that petitioner knowingly and voluntarily waived his right to appear at his state criminal trial and related proceedings.

### 2. *In Absentia Proceedings.*

Where a defendant knowingly and voluntarily waives the right to attend his criminal trial, the decision to hold a trial *in absentia* is committed to the discretion of

the district court. *United States v. Sanchez, supra,* 790 F.2d at 250; *United States v. Pastor,* 557 F.2d 930, 934 (2d Cir.1977); *United States v. Toliver,* 541 F.2d 958, 964 (2d Cir.1976). "[T]he Sixth Amendment demands that courts give the utmost solicitude to the defendant's right to be present at each stage of trial...." *United States v. Pastor,* 557 F.2d 930, 934 (2d Cir.1977); *accord United States v. Walsh,* 700 F.2d 846, 858 (2d Cir.1983), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *United States v. Tortora,* 464 F.2d 1202, 1210 (2d Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). However, where a defendant refuses to appear or is impossible to locate, a trial judge is authorized to hold a trial *in absentia. United States v. Taylor,* 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973).

In the instant case, the state trial judge showed the appropriate reluctance to hold *in absentia* proceedings. Prior to both petitioner's trial and his sentencing hearing, the trial judge held hearings, at which he assessed state efforts to locate petitioner. At these hearings, the court learned that the state had contacted law enforcement agencies, prisons, hospitals, morgues, the college that petitioner previously had attended, and the residence of petitioner's mother, all without finding petitioner. The state court's attempt to aid search efforts by issuing a bench warrant proved similarly ineffectual. Simply put, this Court cannot imagine what further efforts could have been made to locate petitioner.

The instant case thus appears quite different from those cases where the decision to proceed with an *in absentia* trial after a defendant's voluntary absence was held improper. An *in absentia* trial was held inappropriate where the trial court "took no affirmative steps to ascertain whether the accused might be readily located...." *United States v. Beltran-Nunez,* 716 F.2d 287, 291 (5th Cir.1983). Similarly, in *United States v. Benavides,* 596 F.2d 137, 140 (5th Cir.1979) a conviction following a trial *in absentia* was reversed after the trial court had failed to make any inquiry into whether "the trial could be rescheduled with the defendants in attendance."

The recent affirmance by the Second Circuit of a trial *in absentia* supports the holding that an *in absentia* trial was appropriate in the instant case. In *United States v. Sanchez, supra,* 790 F.2d at 251, the court held that the issuance of a bench warrant, together with a one-day continuation of the trial and notification to the defendant's attorney that the trial would resume at the end of this recess, constituted sufficient attempts to encourage defendant's attendance before ordering a trial *in absentia.* Under the *Sanchez* holding, the trial court's efforts in the instant case to locate petitioner clearly were sufficient. *See also United States v. Lochan,* 674 F.2d 960, 967 (1st Cir.1982); *United States v. Martinez,* 604 F.2d 361, 365–66 (5th Cir.), *reh'g denied,* 607 F.2d 1006 (5th Cir.1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980); *Burrell v. Aaron,* 560 F.2d 988, 989–90 (10th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978).

Petitioner has no more substantial basis for attacking the trial court's *in absentia* sentencing hearing than for attacking his *in absentia* trial. Prior to this hearing, the state repeated its earlier efforts to locate petitioner, again without success. After hearing testimony on those efforts, the trial court's decision to schedule an *in absentia* sentencing hearing was in no way inappropriate. *See, e.g., Brewer v. Raines,* 670 F.2d 117, 119–20 (9th Cir. 1982); *Byrd v. Hopper,* 537 F.2d 1303 (5th Cir.1976), *cert. denied,* 429 U.S. 1048, 97 S.Ct. 758, 50 L.Ed.2d 763 (1977).

As the Court of Appeals for this circuit recently observed, both criminal defendants and the public have an important interest in the speedy resolution of criminal trials. *United States v. Sanchez, supra,* 790 F.2d at 251. The importance of such prompt resolution was recognized by Congress in its passage of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.,* which sets specific time limits for the scheduling of criminal

trials once a grand jury has issued an indictment.

This Court recognizes the obvious importance of respecting a defendant's interest in exercising his sixth amendment rights. However, such an interest cannot confer upon a defendant the power to unilaterally postpone his trial by absenting himself from the proceedings. Moreover, such conduct cannot be the basis for a post-conviction attack where state authorities have made every effort to encourage the defendant's attendance at his criminal trial, but the defendant simply has refused to appear.

### CONCLUSION

The instant petition for habeas corpus is denied.

SO ORDERED.